## UNITED STATES v. ONE CASE PAINTINGS, ENGRAVINGS, AND MANUFACTURES OF METAL.

(Circuit Court of Appeals, Second Circuit. January 5, 1900.)

No. 65.

1. CUSTOMS DUTIES—FORFEITURE FOR UNDERVALUATION—RECOVERY OF DUTIES PAID.

The forfeiture and sale by the United States of imported goods for undervaluation, under the provisions of section 7 of the customs administrative act of 1890, as amended by section 32 of the tariff act of 1897, does not relieve the importer from liability for the duty thereon, so as to entitle him to a return of the duty paid. The obligation to pay the duty is incurred by the act of importation, and the importer is not relieved from such obligation by the violation of a different provision of the customs law, although he thereby incurs as a penalty a forfeiture of the entire importation.

2. SAME—ABANDONMENT OF GOODS.

Section 23 of the customs administrative act of 1890, which permits an importer to abandon to the United States all or any portion of the goods

included in any invoice, not less than 10 per cent. of the total value or quantity of the invoice, and be relieved from the payment of duties on the portion so abandoned, applies only to an invoice of goods imported in such condition as would have entitled the importer, under Rev. St. § 2927, for which said section 23 is a substitute, to claim an allowance for damaged goods; and an importer of goods not damaged cannot, by an abandonment of such goods, after they have been seized by the government for an attempted violation of the customs law, relieve himself from liability for the duty thereon, or recover the duty paid.

Appeal from the District Court of the United States for the Southern District of New York.

This was a proceeding to condemn certain imported merchandise as forfeited to the United States, according to section 32 of the tariff act of July 24, 1897, and section 9 of the customs administrative act of June 10, 1890. The facts appear in the opinion.

Arthur M. King, for the United States.

Max J. Kohler, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Fishel, Adler & Schwartz imported into the port of New York per steamship La Normandie, January 3, 1898, one case of paintings and engravings. The goods were subject to duty at 25 per centum ad valorem, under paragraph 403, Tariff Act 1897. Upon entry the estimated duties ($70.50) were paid. The declared value in the invoice and entry of the particular items was 547.50 francs. They were duly appraised and returned by the appraising officer at 1,650 francs ($316.50), an advance of over 200 per cent. In justice to the importers it should be stated that the valuation given in the entry was the price they actually paid for the goods, which they claim to have bought far below the market price, and that they failed to add an additional sum on the entry to make market value through the oversight of a clerk during a busy season. In section 7 of the customs administrative act of 1890, as amended by section 32 of the tariff act of 1897, are found the following provisions:

"If the appraised value of any merchandise shall exceed the value declared in the entry by more than fifty per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence. The forfeiture provided for in this section shall apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles in each invoice which are undervalued."

In conformity to these provisions and to the practice in such cases, information was duly filed, and monition issued March 15, 1898. The goods were attached the next day by the marshal in the hands of the collector. On April 5th, the marshal's return, with proof of due publication of notice, having been filed, a writ of venditioni exponas was issued. The goods were sold April 28, 1898, for $207.28

net, and that amount paid to the clerk of the court. The importers did not appear, nor did they contest the proceedings, nor did they dispute the right of the United States to a decree of forfeiture. Subsequently the court, upon motion of the attorneys for the importers, amended the decree of condemnation and sale so as to provide that the clerk of the court pay over to the United States the net proceeds of the sale only on condition the United States pay over to the importers the sum of $70.52, being the amount of estimated duties deposited with the collector upon the entry of the undervalued merchandise. This was neither more nor less than a decree that the importers should be paid that sum out of the proceeds of the sale. In other words, persons who had not appeared nor claimed such merchandise, nor any part thereof, nor had in any way contested the case, were afterwards awarded a part of the proceeds, because they were, as the court found, creditors of the United States. This appeal might be disposed of upon a discussion of the procedure, but, inasmuch as the representative of the government has asked for a ruling upon the merits as a guide to the treasury department in future proceedings, the point of practice need not be considered. Section 1 of the customs administrative act of June 10, 1890, provides that all merchandise imported into the United States shall, for the purpose of this act, be held to be the property of the person to whom the merchandise may be consigned. Fishel, Adler & Schwartz were the consignees, and it is not disputed that they were the owners. The tariff act provides that there shall be levied, collected, and paid upon all articles imported from foreign countries the duties prescribed in the schedules. Fishel, Adler & Schwartz were the persons who imported the merchandise in question, and "by that act of importing an obligation to pay the duties is incurred. The obligation springs out of the statutes which impose duties." Stockwell v. U. S., 13 Wall. 531, 20 L. Ed. 491. It is not disputed that the $70.52 which the importers paid on account of duties was less than the 25 per cent. ad valorem which the tariff act required. When the importers paid the $70.25, therefore, they paid it as a debt owing from them to the United States. What subsequent occurrence has relieved them from the obligation to pay the debt they incurred when they caused these foreign goods to be imported? Certainly not the undervaluation, or proceedings thereon under section 32 of the act of 1897, quoted supra. That provides only for a penalty to be exacted when the importer fraudulently undervalues his goods. The fact that such penalty involves a forfeiture of the whole package undervalued is in no way inconsistent with the other provision of statute which requires the importer to pay duty. "Importation" and "fraudulent undervaluation" are two distinct acts. The doing of the one act makes the importer a debtor to the government for the amount of duties, the doing of the other act makes him lose his goods; but there is nothing in the language of section 32 which can be construed as a remission of the obligation to pay duties in any event. We find nothing in the numerous authorities cited by both sides which conflicts with this interpretation of the sections now before us. No question is presented here as to whether the

government can exact duty on articles whose importation· it has prohibited, nor whether, under the statutes, it can exact two penalties for the same offense, can collect an additional or penal duty under one section, and forfeit the goods under another for the same act of undervaluation. On the contrary, we have the one section requiring payment of duties as an incident of importation, and the other imposing forfeiture as the penalty for undervaluation. The district judge was evidently misled by an opinion of the attorney general, as will be apparent from the following excerpt from the brief memorandum of opinion filed upon amendment of the decree:

"The government gets the benefit of the duties presumably in the price received on the sale of them; so that there is no presumptive loss of duties. After such a decree. I do not think the duties could be liquidated or collected of the importer, who, by not claiming them, virtually abandoned them as allowed to do under the act of June 10, 1890. 21 Op. Attys. Gen. 326."

There is no doubt as to the soundness of this conclusion if the premises are correctly stated. If the statute allows the importer to abandon his goods, and thereupon relieves him from the payment of duty thereon, of course the government cannot collect duty; and, if the customs officers have collected it, the importer may by proper proceedings secure its return. But the difficulty is that there seems to be no such provision in the statutes. The opinion of the attorney general, under date of April 10, 1896, addressed to the secretary of the treasury, is as follows: ·

"You ask me whether an importer of goods, no part of which is damaged, may be relieved from the payment of the duties on any portion (not less than 10% in value or quantity) of his invoice by abandoning it to the United States. In my opinion, the operation of this section is not confined to damaged goods, and it is not the intent of congress that the United States should in any case exact as duties an amount greater than the values of the property imported. Your question is, therefore, answered in the affirmative." 21 Op. Attys. Gen. 326.

The section referred to is section 23 of the customs administrative act of 1890. It has been amended by the act of May 17, 1898 (30 Stat. 417), so as to add a clause providing that abandoned merchandise shall be delivered by the importer·in compliance with the direction of the chief officer of customs, but in all other respects it remains unchanged. The section reads as follows:

"That no allowance for damage to goods, wares and merchandise imported into the United States shall hereafter be made in the estimation and liquidation of duties thereon, but the importer thereof may within ten days after entry abandon to the United States all or any portion of goods, wares and merchandise included in any invoice and be relieved from the payment of the duties on the portion so abandoned. Provided, that the portion so abandoned shall amount to ten per cent. or over of the total value or quantity of the invoice."

This section takes the place of the old provision of the Revised Statutes as to damage allowance (section 2927), which by the act of 1890 is expressly repealed; and it is apparent on the face of the act that the only importer to whom the privilege of abandonment and relief from payment of duties is accorded is the "importer thereof"; i. e. of goods, wares, and merchandise imported in such condition as would have entitled him, under the repealed section, to claim an

allowance for damages. The opinion of the attorney general refers to no authority, and presents no argument in support of his construction, which seems not warranted by the language of the section referred to. We do not find in it sufficient authority for the conclusion embodied in the decree of the district court, which is, therefore, reversed, with costs of this appeal, and cause remanded, with instructions to decree in conformity to this opinion.